Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 8392 | **DATE** | 9/27/2001 |
| **CASE TITLE** | TC MANUFACTURING CO vs. POLYGUARD PRODUCTS INC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, judgment is entered in favor of plaintiff-counterdefendant TC Manufacturing and against defendant-counterplaintiff Polyguard Products on defendant's counterclaim. This action is dismissed in its entirety.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 28 2001 date docketed | |
| | Notified counsel by telephone. | | | 124 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/27/2001 date mailed notice | |
| JS | courtroom deputy's initials | 01 SEP 28 AM 8:14 Date/time received in central Clerk's Office | JS mailing deputy initials | |

TC MANUFACTURING CO., INC.       )
                                 )
        Plaintiff                )
                                 )
v.                               )   No. 96 CV 8392
                                 )
POLYGUARD PRODUCTS               )
INCORPORATED                     )
                                 )
        Defendant.               )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff TC Manufacturing Co. ("TC") filed this action seeking a declaration of invalidity as to United States Patent 5,120,381 for a Method for Forming a Protective Coating on a Metallic Pipe (hereinafter referred to as "the '381 patent"), which is owned by defendant Polyguard Products, Incorporated ("Polyguard"). Polyguard counterclaimed that TC had wilfully infringed and had wilfully induced infringement of the '381 patent in violation of Title 15 United States Code § 271(a) and (b)[1]. The court's jurisdiction over the subject matter and the parties is pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

---

[1]Subsections (a) and (b) of 15 U.S.C. § 271 state:

(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

(b) "Whoever actively induces infringement of a patent shall be liable as an infringer."

Polyguard also counterclaimed that TC had contributorially infringed the '381 patent in violation of 15 U.S.C. § 271(c) but waived that contention at trial (Tr. 767-68).

## I. Background

On June 27, 2000, the court, after a multi-day bench trial, determined that the '381 patent was valid. (Dkt. 71; 74). On January 24, 2001, after considering the parties submissions regarding the disputed claim language of the '381 patent, the court in accordance with <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996) issued rulings as to claim construction. (Dkt. 93).[2]

From March 26 through April 4, 2001, the court conducted a bench trial regarding Polyguard's contention that TC had infringed and had induced infringement of the '381 patent. Counsel for both sides thereafter submitted post-trial materials including revised proposed findings of fact and conclusions of law. This opinion constitutes the court's findings of fact and conclusions of law. The testimony elicited at the trial in open court is cited as "Tr." followed by page references. The exhibits admitted in evidence are cited as "PX" for plaintiff's exhibits and "DX" for defendant's exhibits. References to any of the ten uncontested facts to which the parties agreed[3] in the final pretrial order entered before

---

[2]The court hereby incorporates by reference its June 27, 2000 Memorandum Opinion and Order (Dkt. 71; 74) and its January 24, 2001 <u>Markman</u> determination (Dkt. 93) as well as the findings of fact and conclusions of law set forth therein.

[3]Those agreed facts, which the court accepts as proven, are listed forth in Schedule (a) of the final pretrial order for the 2001 trial and are as follows:

    1.    The Plaintiff, TC Manufacturing Co., Inc. (hereinafter referred to as "TC"), is an Illinois corporation having an office and principal place of business at 1527 Lyons Street, Evanston, Illinois 60201.

commencement of the trial are cited as "Agreed Fact No." followed by the specific number of the cited agreed fact.

## II. The `381 Patent

Independent claims 1, 7, and 8 of the `381 patent require an adhesive material containing "bitumen" in some form. The parties have agreed that the adhesive on the TC products in question:

---

2.  Defendant Polyguard Products Inc. (hereinafter referred to as "Polyguard") is an Oklahoma corporation with its principal place of business in Texas.

3.  Polyguard is the owner of United States Patent No. 5,120,381 issued June 9, 1992 for Method of Forming a Protective Coating on Metallic Pipe.

4.  TC manufactures tape laminates comprised of a woven polypropylene fabric backing and a synthetic elastomeric adhesive identified as M50RC, M65RC, and RC50.

5.  TC has not received complaints from any users of the M50RC, M65RC, M860 and RC50 materials regarding spiral corrosion after such materials are wrapped around metallic pipes.

6.  TC sometimes recommends that its RC50 material be applied to pipe by applying a primer to the surface of the pipe prior to applying the RC50 material.

7.  TC has sold products identified as M50RC, M65RC and RC50 in the United States for use in applying such products to metallic pipes for forming protective coatings on such pipes.

8.  The synthetic elastomeric adhesive on M50RC, M65RC, and RC50 does not contain bitumen or cold-flowable rubberized bitumen.

9.  The woven polypropylene fabric backing on M50RC, M65RC, M860 and RC50 is formed of essentially flat thermoplastic fibers, is porous and is substantially non-stretchable.

10. TC does not recommend that the synthetic elastomeric adhesive on M50RC, M65RC, RC50 be heated prior to application.

3

M50RC, M65RC, M860, and RC50, (collectively referred to herein as "TC's tapes"), "does not contain bitumen or cold-flowable rubberized bitumen." (Agreed Fact No. 8). Therefore, the only independent claim of the `381 patent TC could have infringed or induced the infringement of is claim 4. That claim uses the term "sealing material," which this court has now determined means: any adhesive capable of forming a seal or bond. Claim 4 reads as follows:

    4. The method of forming a continuous, non-sag, non-shielding protective coating on metallic pipe comprising the steps of:

    (a) forming a laminate comprising a continuous layer of sealing material on a continuous strip of substantially non-elastic porous support backing of basket weave fabric formed of essentially flat thermoplastic fibers having an open surface area of about one percent to about twenty percent;

    (b) applying the sealing material to the surface of said pipe by spirally wrapping the laminate around the pipe so that the edges of the laminate overlap; and

    (c) applying sufficient tension to the laminate during the wrapping procedure to extrude sealing material through the pores of the support backing in the overlapped areas and form a sealing material to sealing material bond between the overlapped layers. (Pat. `381, Col. 8, l. 3-20).

Among the claim terms the court previously construed in compliance with its <u>Markman</u> obligation was the term "sufficient tension," found in element (c) of claim 4 and each of the other independent claims. The court held that the term "sufficient tension," as used in the `381 patent means:

    "the amount of tension necessary to extrude the [sealing material] as described in the claims that exceeds that of pressing the laminate onto the pipe with a roller or that of achieving a visual squeeze out at the overlap." (Dkt. 93).

Counsel for both sides agreed with the court's construction of that term. (Tr. 280).

Among the prior art cited in the `381 patent was U. S. Patent No. 3,388,723 issued to McNulty ("McNulty `723 patent") which had taught the use of sufficient tension to squeeze bituminous waterproofing composition through porous mesh or gauze at the spirally-wrapped overlaps to provide a bonding action at the overlaps. (Dkt. 116, Attachment, PX 38, F034, para. 19). The McNulty `723 patent disclosed elastic backings (Id. at F059-60). The proposed phrase quotation makes "substantially non-elastic," without more, was found by the examiner according to the prosecution history of the `381 patent to mean at least partially elastic. (Id. at F060). When the language explicitly recommended by the patent examiner in his November 13, 1991 Advisory Action (Id. at F064) was added to the proposed claim language, to specifically define the support backing as "a basket weave fabric formed of essentially flat thermoplastic fibers and has an open surface area of about one percent to twenty percent" (Id.), the claims of the `381 patent were allowed. (Id. at F073).

TC's tapes have a woven polypropylene fabric backing that is formed of essentially flat thermoplastic fibers, is porous and is substantially non-stretchable. (Agreed Fact No. 9). The court finds that the TC backing reads on claim 4 of the `381 patent ( Col. 8, l. 8) and is a substantially non-elastic porous support backing. (Tr. 457-58). The court also finds that the application of the "sufficient tension" required by element (c) of the `381 patent, "to extrude the sealing material through the pores of the [specifically

5

defined] support backing in the overlapped areas and form a sealing material to sealing material bond between the overlapped layers," (Pat. '381, Col. 8, l. 16-20) is an essential step in the patented method of the '381 patent. The greater tension that may be applied during the wrapping process is stated in the '381 patent's specification several times. For example:

> "Since the support backing of the present invention is substantially non-elastic greater tension may be applied . . . Greater tension not only assures complete fill adjacent the overlapped edges, it aids in prevention of forming trapped air bubbles between the pipe surface and the bitumen layer during application. Since the support backing permits greater tension to be applied, air bubble formation is substantially eliminated. . . ." (Pat. '381, Col. 6, l. 64 to Col. 7, l. 14).

Therefore, the '381 patent's descriptions show that the "sufficient tension . . . to extrude sealing material through the pores of the support backing" (Pat. '381, Col. 8, l. 15-17) of the '381 patent's method has additional advantages over other spiral wrapping methods of applying tapes. Moreover, extrusion of the sealing material through the tape backing during the wrapping process to form a sealing material to sealing material bond is a necessary step for infringement of the '381 patented method to occur.

### III. Discussion of the Evidence

Element (c) of claim 4 of the patented method set forth in the '381 patent, was the focus of the bulk of the parties' evidence presented at trial. That evidence primarily addressed the question of whether TC's tapes' adhesive sealing materials extrude through TC's tapes' mesh fabric backings during the process of spiral wrapping of TC's tapes around a metal pipe.

6

Although Polyguard presented no direct evidence of TC or any other entity or individual ever directly infringing claim 4 of the '381 patent by using the method of claim 4 when spiral wrapping any of TC's tapes around a metal pipe, Polyguard presented circumstantial evidence at the trial, including Defendant's Exhibits 39, 40, 41 and 42, the "Product Data" sheets, which TC has provided to customers for each of the four TC tapes in question, include certain wrapping instructions. Each "Product Data" sheet for each of the four TC tapes is identically worded as to the instructions for spiral wrapping the respective TC tape. Each sheet states as a bullet point under the heading "Tape Application":

> **Spiral Wrap:** Tapecoat [product name] is applied by removing the release liner and spirally wrapping in a single thickness with a continuous overlap of tape. <u>Tension in wrapping should be enough to obtain conformability to the surface being coated</u>. (DX 39, 40, 41, 42) (Emphasis added).

Polyguard at the trial also presented a video tape (DX 38) which TC has provided to TC's customers showing equipment available for spiral wrapping TC's tapes around metal pipes and the technique recommended by TC to users of TC's tapes when spiral wrapping TC's tapes around metal pipes. Polyguard also presented the testimony of Mr. Richard Norsworthy who testified, among other things, regarding his visual observations of certain exhibits of spirally wrapped TC tapes. Those exhibits on which Mr. Norsworthy opined included Defendant's Exhibit 55 (Tr. 407-415), which was a plastic pipe covered by a release paper (Tr. 176) and wrapped with TC's M50RC tape during a courtroom demonstration of spirally wrapping the TC tape M50RC around the pipe using a mechanical hand

7

wrapping device. (DX 37) (Tr. 175-183). This court having viewed the demonstration finds that the amount of tension applied to the TC tape by Polyguard's witness, Mr. Chic Hughes, a Polyguard employee, during the wrapping demonstration which produced Defendant's Exhibit 55 was greater than the amount of tension which TC instructs its customers to apply in TC's product literature. TC's literature states that the tension should be: "enough to obtain conformability to the surface being coated." (DX 39, 40, 41, 42).

Polyguard's employee-witness Mr. Hughes testified regarding the tension he used to create Defendant's Exhibit 55 saying:

> "I put it on tightly to ensure that we got good conformation to -- at the overlap to force the compound in through the weave and to fill in the helix area." (Tr. 179).

Polyguard introduced no evidence as to the amount of tension applied to TC's tape by TC's customers when using TC's tapes or by TC's personnel during TC's field demonstrations for customers such as depicted in the video tape Defendant's Exhibit 38, other than the above-quoted TC literature (DX 39, 40, 41, 42) which does not instruct customers to apply tension in the amount sufficient to extrude or force the adhesive material through the weave of the mesh-weave backing, the amount of tension Mr. Hughes testified he applied to Defendant's Exhibit 55. (Tr. 179).

Even with the amount of tension Mr. Hughes applied, to create Defendant's Exhibit 55, there was only "squeeze out" of the adhesive material at the edge of the TC tape's overlap. Mr. Hughes did not see and the court neither saw nor felt, when the court

touched the Defendant's Exhibit 55, any adhesive material extruding through the mesh backing of the TC tape. (Tr. 202-206).

Polyguard's witness Mr. Norsworthy testified during Polyguard's case regarding his opinion as to the four TC tapes' adhesives' flow (Tr. 496-497) and in rebuttal that he observed "adhesive blossoming" (Tr. 1258) through the fabric backing of the spirally wrapped TC tapes marked Plaintiff's Exhibit 179 and Defendant's Exhibit 24 (Tr. 1259-68), when he used his lighted magnifying glass (DX 62)(Tr. 1260-79). Mr. Norsworthy's testimony that TC's tapes' adhesive material extruded through the tape backing (Tr. 408-15) and formed an adhesive to adhesive seal (Tr. 494-97), however, was contradicted by TC's expert witness Dr. Dennis O'Rell (Tr. 386-394; 960-1134).

Dr. O'Rell's was a highly credible expert witness as to the polymer adhesives used in TC's tapes (PX 123), their molecular size, which is thousands of times longer and greater in dimension than a molecule of water (Tr. 388), and their molecular weight, which is hundreds of thousands of grams per mole (Tr. 389). Dr. O'Rell credibly explained that the flow of TC's polymer adhesives on TC's tapes is impeded and inhibited by the small size of the pores or holes in the mesh backing of TC's tapes when spirally wrapped on a pipe. (Tr. 393-394, 995-1029). He explained that because the TC adhesive is a synthetic polymer-based adhesive, it has a high degree of viscoelastic flow behavior. (Tr. 391-395, 1025). Dr. O'Rell further testified that as the TC adhesive materials try to flow through small openings, the chain entanglement (Tr. 393-394) that accompanies the viscoelastic

adhesive material precludes small portions of the adhesive material moving off in directions without pulling behind the rest of the material. That characteristic impedes and inhibits the TC polymer adhesives from flowing through very small openings (Tr. 1025-1026). Thus, the evidence established that the viscoelastic characteristics of the TC adhesives inhibited those adhesives from flowing through the small pores and small openings between the fibers of the fabric backing of TC's tapes. Dr. O'Rell also testified that if a microscopic amount of TC adhesive were to extrude through the mesh backing it would not be enough to form an adhesive-to-adhesive bond between the overlapped layers of the spirally wrapped TC tape. (Tr. 1029-1035). As stated earlier, Dr. O'Rell's testimony credibility refuted Mr. Norsworthy's testimony (Tr. 407-15) about TC's adhesive extruding through the pores or between the fibers of the basket-weave support backing (PX 170-A, 171-A) of TC's tapes and forming an adhesive to adhesive seal (Tr. 494-97) as required by the '381 patent. The court credits Dr. O'Rell's testimony over that of Mr. Norsworthy.

### IV. The Applicable Law

Direct infringement of a method patent, such as the '381 patent, in violation of § 271(a) can be accomplished in two ways, literally or under the doctrine of equivalents.[4] Literal infringement of a claim occurs when every limitation recited in the

---

[4] Warner-Jenkinson v. Hilton Davis Chemical Co., 520 U.S. 17, 39 (1997); Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608 (1950).

claim reads on the accused method exactly.[5] A claim that does not literally read on an accused method may nevertheless be infringed under the doctrine of equivalents if the differences between the claim and the accused method are insubstantial.[6] There are additional limits on the application of the doctrine of equivalents in an infringement action. For example, there can be no infringement under the doctrine of equivalents if the asserted scope of the equivalency would encompass the prior art[7] or if prosecution history estoppel bars the application of the doctrine.[8] No showing of intent to infringe need be made to prove direct infringement: the accused infringer's knowledge and intent are considered only with respect to damages.[9]

To establish liability for inducement of infringement in violation of § 271(b), two requirements must be proven: (1) that the conduct induced was a direct infringement of the patent's claim;[10] and (2) that the accused inducer of that infringing conduct

---

[5] See DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1331 (Fed. Cir. 2001); Ambil Enters., Ltd. v. Wawa, Inc., 81 F.3d 1554, 1562 (Fed. Cir. 1996).

[6] WMS Gaming Inc. v. International Game Technology, 184 F.3d 1339, 1352 (Fed. Cir. 1999).

[7] See Marquip, Inc. v. Fosber America, Inc., 198 F.3d 1363, 1367 (Fed. Cir. 1999).

[8] See e.g., Lockheed Martin Corp. v. Space Systems/Loral, Inc., 249 F.3d 1314, 1326-27 (Fed. Cir. 2001); Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 234 F.3d 558, 574-78 (Fed. Cir. 2000).

[9] Florida Prepaid Postsecondary Education Expense Bd. v. College Savings Bank, 527 U.S. 627, 645 (1999).

[10] See e.g., Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 774 (Fed. Cir. 1993); Moleculon Research Corp. v. CBS, Inc., 872 F.2d 407, 410 (Fed. Cir. 1989); Met-Coil Systems Corp. v.

knew or should have known that its actions would induce actual infringement.[11]

In other words, in this case to prevail as to §271(a), Polyguard had to establish that TC directly infringed claim 4 of the `381 patent, either literally or under the doctrine of equivalents. To prevail as to § 271(b), Polyguard had to prove a third party's direct infringement of claim 4 of the `381 patent was actively induced by TC, and TC knew or should have known its actions would induce that direct infringement. Polyguard did not have to prove TC's alleged inducement of the third party's direct infringement of claim 4 by direct evidence, in that circumstantial evidence, such as TC inducing infringement by providing instructions describing an infringing use of TC's tapes, would suffice.[12] Polyguard, however, had to prove its counterclaim's allegations regarding infringement and active inducement of infringement by a preponderance of the evidence to prevail.

---

Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed. Cir. 1986).

[11]Mentor H/S, Inc. v. Medical Device Alliance, Inc., 244 F.3d 1365, 1379 (Fed. Cir 2001); Manville Sales Corp. v. Paramount Systems, Inc., 917 F.2d 544, 553 (Fed. Cir. 1990); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990); Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988).

[12]See e.g. Biotec Biologische Naturverpackungen v. Biocorp, Inc., 249 F.3d 1341, 1351 (Fed. Cir. 2001); Moleculon Research Corp. v. CBS, Inc., 872 F.2d 407, 410 (Fed. Cir. 1989); see also, CFMT, Inc. v. Steag Microtech, Inc., 194 F.3d 1336 (Fed. Cir. 1999).

## V. Summary of Findings and Conclusions

### A. TC Did Not Directly Infringe The '381 Patent

After considering all the direct and circumstantial evidence, the court finds that Polyguard did not establish by a preponderance of the evidence that TC or any of its personnel ever directly infringed claim 4 of the '381 patent by using the method described in claim 4 of the '381 patent, either literally or under the doctrine of equivalents, because Polyguard did not prove that TC or any of its personnel ever applied sufficient tension to any TC tape, during the process of spirally wrapping TC tape to a metallic pipe, to extrude the adhesive sealing material of TC's tape through the pores of the tape's support backing in the overlapped areas to form a sealing material to sealing material bond between the overlapped layers as required by element (c) of the '381 patent.

### B. TC Did Not Actively Induce Infringement Of The '381 Patent

Likewise, Polyguard did not establish by a preponderance of the evidence that TC ever actively induced any entity or person to directly infringe claim 4 of the '381 patent because Polyguard did not prove that TC's by its conduct or its instructions to its customers ever caused anyone to infringe element (c) of claim 4 of the '381 patent by performing the steps of the method described in claim 4. The court finds that Polyguard did not establish by a preponderance of the evidence that the extrusion of sealing material through the pores of the support backing of TC's tapes to form a sealing material-to-sealing material bond would occur when a customer complied with TC's instructions. Polyguard did not establish that TC's instructions to TC's customers that: "Tension

13

in wrapping should be enough to obtain conformability to the surface being coated," (DX 39, 40, 41, 42) literally "reads on" or is equivalent to element (c) of the '381 patent which, as quoted before, requires:

> (c) applying sufficient tension to the laminate during the wrapping procedure to extrude sealing material through the pores of the support backing in the overlapped areas and form a sealing material to sealing material bond between the overlapped layers. (Pat. '381, Col. 8, l. 15-20).

Therefore, TC's conduct was not shown by a preponderance of the evidence to have actively induced any direct infringement of claim 4 of the '381 patent by anyone. Likewise, Polyguard did not prove by a preponderance of the evidence that TC knew or should have known its actions or instructions in selling TC's tapes would induce actual infringement of Polyguard's '381 patent.

## Conclusion

For the reasons stated herein, the court finds in favor of plaintiff-counterdefendant TC Manufacturing, Inc. and against defendant-counterplaintiff Polyguard Products, Inc. on Polyguard's counterclaim. Judgment is ordered entered thereon. All issues in this case have now been fully adjudicated. Therefore, this case is dismissed in its entirety. Each side, being fully capable of bearing its own costs, is ordered to do so.

ENTER:

_James F. Holderman_
JAMES F. HOLDERMAN
United States District Judge

DATED: September 27, 2001

# United States District Court
## Northern District of Illinois
### Eastern Division

| | |
|---|---|
| TC MANUFACTURING CO., INC | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 96 C 8392 |
| POLYGUARD PRODUCTS INC | |

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial before the Court. The issues have been tried and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff-counterdefendant TC Manufacturing Co., Inc. and against defendant-counterplaintiff Polyguard Products Incorporated on defendant's counterclaim. This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 9/27/2001

J. Smith, Deputy Clerk